**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **HAMEEDULLAH HAMIDI,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:25-CV-00265** |
| | § | |
| **KRISTI NOEM,** *et al.* | § | |
| | § | |
| **Respondents.** | § | |

**MEMORANDUM & ORDER**

Pending before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), filed by Petitioner Hameedullah Hamidi. Petitioner is an Afghan national who fled persecution in Afghanistan and has been held in immigration detention for over a year since his arrival in the United States in January of 2025. (Dkt. 1 at 4; *see* Dkt. 15, Attach. 1 2–3.) An immigration judge granted him withholding of removal under the Immigration and Nationality Act (INA) and deferral of removal pursuant to the Convention Against Torture (CAT) on May 19, 2025, prohibiting his removal to Afghanistan. (Dkt. 1 at 7; Dkt. 15, Attach. 1 at 3.) Petitioner remained in custody throughout the duration of his removal proceedings and since having been granted withholding of removal, and he has filed this habeas action seeking release. (*See* Dkt. 1.) Having considered the Parties' filings and the applicable law, the Court concludes that Petitioner's detention has become unreasonably prolonged in violation of his due process rights.

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED. Respondents are ORDERED to release Petitioner from custody on or before **January 23, 2026**, subject to reasonable conditions of supervision. The Parties must notify the Court of the status of Petitioner's release by **5 P.M. Central Standard Time (CST) on January 23 , 2026**.

1 / 17

## Background

### A. Hameedullah Hamidi

Petitioner Hameedullah Hamidi ("Petitioner" or "Mr. Hamidi") is a 24-year-old citizen of Afghanistan who fled his home country due to persecution he and his family experienced at the hands of the Taliban. (Dkt. 1 at 4; *see* Dkt. 15 at 3) "His family served alongside United States Military forces in combat operations against the Taliban in Afghanistan." (Dkt. 1 at 4.) As a result of their service with U.S. forces, the Taliban systematically targeted Petitioner's family and killed his oldest brother, two uncles, and his cousin. (*Id*.) In October of 2020 Mr. Hamidi was selected by U.S. and Afghan officers and sent to India for military officer training with the Afghan National Army. (*Id*.) After the Taliban takeover of Afghanistan in 2021, Mr. Hamidi remained in India for military training, but in 2024 the Afghan consulate in India was turned over to Taliban control which put Mr. Hamidi at risk of deportation. (*Id*.) Petitioner transited through Japan and Mexico before entering the United States on January 2, 2025, to seek asylum. (*Id*.; *see* Dkt. 15, Attach. 1 at 2.) [1]

Mr. Hamidi was apprehended at the U.S.-Mexico border in January of 2025, after having entered without inspection. (*See* Dkt. 1 at 4; Dkt. 15, Attach. 1 at 2.) Mr. Hamidi was detained and placed in expedited removal proceedings. (Dkt. 15, Attach. 1 at 2.) He expressed a fear of persecution in Afghanistan and had a credible fear interview with United States Citizenship and Immigration Services (USCIS.) (*Id*.) On February 23, 2025, USCIS issued a Notice to Appear after an asylum officer found that Mr. Hamidi had established a credible fear of persecution or torture. (*Id*.)

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

On May 19, 2025, an Immigration Judge granted Mr. Hamidi's application for withholding of removal and protection under the Convention Against Torture. (*Id*.; Dkt. 1 at 14.) In granting withholding of removal, the IJ determined that Mr. Hamidi was more likely than not to suffer persecution or torture if removed to Afghanistan. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16. Additionally, as part of granting the withholding of removal, the IJ simultaneously entered an order of removal to Afghanistan in Mr. Hamidi's file. (*See* Dkt. 1 at 14–16.) Both Mr. Hamidi and DHS waived appeal of the IJ's decision. (Dkt. 1 at 17; Dkt. 15, Attach. 1 at 3)

Withholding of removal is a form of immigration relief that requires the Government not to remove a noncitizen to a country where he has shown a sufficient likelihood of persecution, although it does not guarantee relief from removal to an alternative country. 8 U.S.C. § 1231(b)(2)(E); *see generally* 8 U.S.C. § 1231(b) (providing the framework for designation). However, relatively few noncitizens granted withholding removal have successfully been removed to alternative countries historically. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (addressing the contention that "DHS often does not remove an alien to an alternative country if withholding relief is granted" and "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country").

DHS policy has generally been to release noncitizens granted withholding of removal or CAT protection subject to conditions of supervision. *See* U.S. Dep't of Just., Detention and Release during the Removal Period of Aliens Granted Withholding of Removal or Deferral of Removal (Apr. 2, 2000), https://perma.cc/MDW6-RQS5. But in February of 2025, the Department of Homeland Security issued a policy directive instructing the Enforcement and Removal Operations (ERO) division of ICE to review the cases of noncitizens granted withholding of removal or protection under the Convention Against Torture (CAT) "to determine the viability of removal to

a third country and accordingly whether the alien should be re-detained." February 18, 2025, DHS Policy Directive on Expedited Removal and Nondetained Docket (Feb. 18, 2025), https://perma.cc/T8TV-GT84; *see also D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass. 2025).

Mr. Hamidi has now been in ICE custody for nearly one year since he entered in January of 2025. (*See* Dkt. 1 at 1, 4, 7; Dkt. 15, Attach. 1 at 2.) Since his removal order became administratively final in May of 2025, Petitioner has requested release from ICE through formal written requests and communications. (Dkt. 1 at 6.)

Petitioner's habeas petition details the following request and responses:

a. On July 23, 2025, ICE responded to Petitioner's request by stating: "This is out of my control. I am still waiting for further guidance."

b. On August 18, 2025, after Petitioner cited the 90-day statutory removal period, ICE responded: "No sir, your case is still being reviewed. ICE does not have to release you at 90 days."

c. On August 19, 2025, when Petitioner requested release on an Order of Supervision, ICE responded: "the decision is not up to me it is up to the supervisor sir."

d. On August 25, 2025, regarding third country removal, ICE acknowledged: "Yes sir, of course your officer has tried. So far no country has agreed."

e. On September 1, 2025, ICE responded: "We are waiting on Washington – headquarters to let us know."

f. On September 8, 2025, after Petitioner declared his full cooperation from his side and a reminder that he has sent all documents requested, ICE stated: "Your officer has all supporting documentation, however, decision was made and you will not be released."

g. On September 29, 2025, ICE stated: "The decision will come from the US government, sir. They will advise me of the decision."

h. On November 5, 2025, ICE responded: "Decision has not yet been received from deciding officials."

i. On November 19, 2025, after Petitioner cited *Zadvydas* and explained that 185 days had passed since his withholding grant, ICE responded: "We are waiting for headquarters to send their decision. ICE continues to work on finding a third country that will accept you."

j. On November 27, 2025, ICE responded: "We are currently waiting for guidance on your case. We are aware of your situation and understand your frustration. I assure you we are actively seeking an alternative."

Dkt. 1 at 6–7.

4 / 17

Respondents report that on May 22, 2025, ICE sent requests to Mexico, Costa Rica, and Panama to accept the Petitioner's removal. (Dkt. 15 at 4.) However, "[a]ll countries denied the respective requests to accept Petitioner." (*Id.*) Respondents confirm that on September 5, 2025, Enforcement and Removal Operations (ERO) informed Mr. Hamidi that he would not be released from custody. (Dkt. 15, Attach. 1 at 3.) The Government further confirms that throughout October, ERO served Mr. Hamidi with a notice of review of custody status, conducted a 180-day Post Order Custody Review, and sent a follow up to ERO Headquarters Custody Management Unit regarding third country removals. (*Id.*) About two months later, on December 19, 2025, ERO submitted the 180-day Post Order Custody Review to ERO Headquarters Custody Management Unit for review and concurrence. (*Id.*) Respondents do not document any additional requests or potential removal efforts taking place at this time. (*See generally* Dkt. 15.)

**B.  Procedural Background**

Mr. Hamidi filed the instant habeas action on December 16, 2025. (Dkt. 1.) His petition asserts three claims for relief. (*Id.* at 7–9.) First, he claims that his detention is in violation 8 U.S.C. § 1231(a) of the Immigration and Nationality Act. (*Id.*) Second, he claims that his detention has become indefinite in violation of the Due Process Clause of the Fifth Amendment because his removal is not reasonably foreseeable. (*Id.*) Third, he argues that removal to an undisclosed third country would violate the Due Process Clause of the U.S. Constitution. (*Id.*) Mr. Hamidi asks the Court to grant declaratory and injunctive relief and order his immediate release from immigration detention. (*Id.* at 9–10.)

Respondents moved to dismiss Petitioner's habeas petition for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. (Dkt. 15 at 1); *see* Fed. R. Civ. P. 12(b)(1), (6). Respondents also argue, in the alternative, for summary judgment. (Dkt.

15 at 1.) Respondents first argue that Petitioner has failed to satisfy his burden of proof to show that there is no significant likelihood of removal in the near future. (*Id*. at 6.) Second, Respondents argue that Mr. Hamidi "has not identified any self-made efforts to effectuate his removal order." (*Id*. at 7) Finally, Respondents also state that ICE is seeking to facilitate Petitioner's removal to a third country. (*Id*. at 8–9.)

As of the date of this Order, Petitioner remains detained at the Webb County Detention Center in Laredo, TX, and there is no evidence that Respondents have submitted any additional country requests or that any country has communicated that it will accept Mr. Hamidi. (*See* Dkt. 15, Attach. 1.)

### Legal Standard

**A.   28 U.S.C. § 2241**

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws. . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id*. (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Habeas is "the basic method for obtaining review of continued *custody after* a deportation order had become final" and is available "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687–88 (citation omitted). "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id.* at 699 (citing 28 U.S.C. § 2241(c)(3)).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citation omitted).

**B.  Federal Rule of Civil Procedure 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "lack of subject-matter jurisdiction" Fed. R. Civ. P. 12(b)(1). The burden of establishing subject-matter jurisdiction rests on the Petitioner. *See Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

**C.  Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). But when a party has filed for the writ of habeas corpus "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corrections of Ill.,* 434 U.S. 257, 269 n.14 (1978)).

### D.  Rule 56(a) Summary Judgment

Generally, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. Bromac Title Servs., L.L.C.,* 755 F.3d 347, 350 (5th Cir. 2014). If the moving party meets its burden of demonstrating the absence of a genuine factual dispute, the non-movant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party," and a "fact issue is 'material' if its resolution could affect the outcome of the action." *Canady v. Davis*, 687 F. App'x 362, 365 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)). "Because this case arises in a summary judgment posture, we view the facts in the light most favorable to [Petitioner], the nonmoving party." *Id*. (quoting *City & County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1769 (2015)).

### Discussion

As a threshold matter, the Court refrains from considering the merits of Mr. Hamidi's Third Claim because it appears premature. (*See* Dkt. 1 at 9.) Mr. Hamidi's Third Claim is that Respondents' policy on third-country removals, which allows a non-citizen to be removed without affording them with notice of the country of intended removal or an opportunity to be heard on a fear-based claim related to that country, violates the Convention Against Torture and 8 U.S.C. §

1231(b)(3)(A) and goes against U.S. regulations. (Dkt. 1 at 9.) However, Respondents do not appear to currently have any third countries to which they are actively trying to remove Petitioner nor any countries that have agreed to accept Petitioner, therefore this claim appears premature at this time. (*See* Dkt. 1 at 7; Dkt. 15 at 4; Dkt. 16 at 12.) Thus, Petitioner's Third Claim regarding potential statutory and regulatory violations regarding removal to a third country remains pending with this Court.

The Court now considers Petitioner's claims that his post-removal-period detention by immigration authorities has become unreasonably prolonged in violation of the INA and his due process rights. (Dkt. 1 at 7–8.) Respondents counter that Petitioner's continued detention is lawful pursuant to the framework established by the Supreme Court for post-removal detention in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that Petitioner's claims should be dismissed because he has not shown that there is no significant likelihood of removal in the reasonably foreseeable future. (Dkt. 15 at 6–7.) The Court addresses each of these arguments in turn after first examining its jurisdiction over Petitioner's claim.

## A.  Subject Matter Jurisdiction

The primary federal habeas corpus statute confers federal subject-matter jurisdiction over habeas petitions filed by noncitizens who claim they are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas,* 533 U.S. at 687. However, the REAL ID Act of 2005 divested federal courts of jurisdiction over various important categories of immigration cases. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005); *codified as* 8 U.S.C. § 1252. Specifically, district courts may not review challenges to final orders of removal, the Attorney General's discretionary judgment to detain a noncitizen, or questions of law and fact "arising from rising from any action taken or proceeding brought to remove an alien

9 / 17

from the United States." *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (e); *Texas v. United States*, 126 F.4th 392, 417 (5th Cir. 2025); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). Additionally, no federal court may review claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).

But the Supreme Court has recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)). Moreover, the Supreme Court has rejected a broad reading of these provisions, cautioning that that "[i]nterpreting "arising from" in this extreme way would also make claims of prolonged detention effectively unreviewable." *Id.* at 293. Therefore, federal courts retain "jurisdiction to review [a noncitizen's] detention insofar as that detention presents constitutional issues," *Oyelude,* 125 F. App'x at 546; *see also Nielsen v. Preap,* 586 U.S. 392, 401–02 (2019); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Moreover, "Section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted); *see also Sagastizado v. Noem (Sagastizado II)*, 2025 WL 2957002, at *7–8 (S.D. Tex. Oct. 2, 2025). Likewise, "where review of an agency determination involves neither a determination as to the validity of the [petitioner's] deportation

order[] or the review of any question of law or fact arising from their deportation proceedings, §

1252(a)(5) and (b)(9) should not operate as a bar to the district court's review." *Duarte v.*

*Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022).

The Court now only considers Mr. Hamidi's post-removal-period detention rather than any

aspect of his underlying removal order or the decision by DHS to execute it. Thus, his claim is not

barred, and the Court retains jurisdiction to determine whether his continued detention by DHS

violates his due process rights. *See Villanueva v. Tate*, 2025 WL 2774610, at *5–6 (S.D. Tex. Sep.

26, 2025) ("challenges [to] the government's authority to hold [Petitioner] in detention indefinitely

while it tries to find a third country that will accept him . . . [are] not barred.")

## B.  Limits on Post-Removal-Period Detention Under *Zadvydas*

Mr. Hamidi argues that his post-removal-order detention by immigration authorities has

become unreasonably prolonged in violation of his due process rights and the INA given that his

detention has stretched for over 232 days, or nearly 8 months, since his removal order became final

on May 19, 2025. (S*ee* Dkt. 1; Dkt. 16.)  Pursuant to § 1231, once an IJ issues a removal order and

that order becomes "final," the Attorney General has ninety days to affect the detainee's departure

from the United States. *See* 8 U.S.C. § 1231(a)(1)(A); *Andrade v. Gonzales*, 459 F.3d 538, 543

(5th Cir. 2006) *cert. denied*, 549 U.S. 1132 (2007). The beginning of the removal period is

calculated to be the latest of "(i) The date the order of removal becomes administratively final. (ii)

If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien,

the date of the court's final order. (iii) If the alien is detained or confined (except under an

immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §

1231(a)(1)(B). In general, during this 90-day removal period, the detainee must remain detained. 8

U.S.C. § 1231(a)(2). If the detainee is not removed within that 90-day period, he may become

eligible for supervised release until removal can be accomplished, or DHS may continue to detain him for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 385 (2005); 8 U.S.C § 1231(a)(3).

But post-removal-period detention must comport with constitutional limits. The Supreme Court has recognized "permitting indefinite detention of an alien would raise a serious constitutional problem" and that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690.  Thus, the Supreme Court held in *Zadvydas* that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal.  *Id.* at 699. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* (citations omitted).

In order to guide lower courts reviewing the reasonableness of continued detention, the Supreme Court determined that there is a presumably reasonable period of six months of detention from the time that a removal order becomes final.[2] *Id.* at 701. After six months have elapsed, once a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the respondents do not offer sufficient rebuttal evidence once a habeas petitioner has made such a showing, then the court should grant the writ and order the habeas petitioner released under the *Zadvydas* framework. *See id.*; *but see Andrade*, 459 F.3d at 543–44

---

[2] Courts, including this one, have understood the six-month presumption to be a period of 180 days which comports with DHS's post-removal custody review procedures. *See Sagastizado II*, 2025 WL 2957002, *16; *Villanueva*, 2025 WL 2774610, at *2; 8 C.F.R. § 241.4(k)(2)(ii).

(finding that petitioner had failed to meet his initial burden when he offered "nothing beyond conclusory statements").

The parties do not dispute that Mr. Hamidi has been detained for over six-months since his final order of removal was entered. (*See* Dkts 1, 15, 16.) Thus, having surpassed the six-month presumption of reasonableness under *Zadvydas*, the Court's analysis focuses on whether Mr. Hamidi has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and whether Respondents have responded "with evidence sufficient to rebut that showing." *Zadvydas,* 533 U.S. at 701.

### 1.  Foreseeability of Petitioner's Removal to a Third Country

The Court now turns to whether Petitioner has provided a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and if so, whether the Respondents have submitted sufficient evidence to rebut that showing. Respondents make the conclusory statement that "Petitioner has not met his initial burden of demonstrating that there is no significant likelihood of removal" without addressing any of Petitioner's evidence or arguments that indicate there is not a significant likelihood of removal in his case. (Dkt. 15 at 6–7.)

Respondents argue the following:

> The essence of Petitioner's claim is that ICE alone carries the burden of effectuating his removal, irrespective of whether Petitioner himself has engaged in any efforts to facilitate his removal. This argument contradicts the statutory requirement that the 90-day removal period shall be extended if the alien 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure'

(*Id*.) (citation omitted.) Respondents do not point to any interference or failure to cooperate on the part of Petitioner. Instead, Respondents argue that because 8 U.S.C. § 1231(a)(1)(C) states that the post-removal detention period may be extended when a noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary" to the noncitizen's departure or

13 / 17

"conspires or acts to prevent" their own removal, Petitioner's failure to self-effectuate his removal means that his arguments regarding prolonged detention must fail.

The Court notes that Respondents cite no case law to support their argument that a petitioner being held in post-removal detention must find a way coordinate travel documents and effectuate their own removal to a third country. In the context of prolonged detention claims under *Zadvydas*, some courts consider a noncitizen's failure to cooperate in removal efforts when considering whether the noncitizen has shown there is no significant likelihood of removal in the reasonably foreseeable future; others have found that failure to cooperate precludes a prolonged detention claim; and still other courts find that failure to cooperate equitably tolls the presumptively reasonable six-month removal period. *Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (citations omitted). None of these approaches are relevant here, where there is no evidence that Mr. Hamidi has obstructed or otherwise failed to cooperate with removal efforts.  If anything, Petitioner has demonstrated he has actively cooperated with ICE and provided the necessary documentation. (*See* Dkt. 1 at 6) ("after Petitioner declared his full cooperation from his side and a reminder that he has sent all documents requested, ICE stated: 'Your officer has all supporting documentation, however, decision was made and you will not be released.'")

For a petitioner to show that there is "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" the petitioner is not required to "show the absence of *any* prospect of removal— no matter how unlikely or unforeseeable," *See Gomez v. Mattos*, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (quoting *Zadvydas*, 533 U.S. at 701– 02).  Mr. Hamidi has submitted allegations that his removal is not reasonably foreseeable because he "remains unremovable to Afghanistan due to his still-valid orders for withholding and deferral

of removal and the categorical impossibility of removal to Afghanistan." (Dkt. 1 at 7.) The fact that Mr. Hamidi has been granted withholding of removal from his native country of Afghanistan in of itself makes his likelihood of removal from the United States far less likely. *See Johnson*, 594 U.S. at 537 ("only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country"); *Zavvar v. Scott*, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025) ("A grant of withholding of removal 'substantially increases the difficulty of removing' an individual." (quoting *Munoz-Saucedo v. Pittman,* 789 F. Supp. 3d 387, 398 (D. N.J. 2025))).  In addition, Mr. Hamidi does not have legal residence or legal status in any other country. Petitioner argued that as of the filing of his Petition, Respondents had not designated any other country for removal, and no other country had agreed to accept him. (Dkt. 1 at 7.) Petitioner points out that "ICE has acknowledged that no third country has agreed to accept Petitioner." (*Id.*) Petitioner specifically notes that "ICE has provided no plan, timeline, or legal basis for Petitioner's continued indefinite detention." (*Id.*)

Finally, as Mr. Hamidi asserts, the fact that DHS has not identified a third country that is willing to accept him makes his removal even more impracticable. *See Trejo v. Warden of ERO El Paso East Montana*, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (finding removal not reasonably foreseeable because "ICE has not identified a third country that will accept him."). Accordingly, under similar factual circumstances to Mr. Hamidi, courts have found that a petitioner has met their burden by offering proof of a grant of withholding of removal and a lack of assurances that a third country will accept them. *See, e.g., Salazar-Martinez v. Lyons*, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (citations omitted); *Trejo*, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025); *Garcia-Aleman v. Thompson*, 2025 WL 3534806, at *5 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted*, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025).

15 / 17

Therefore, Mr. Hamidi's evidence that he remains detained with his removal to his native country of Afghanistan prohibited by law and no assurances that he can be removed to a third country is sufficient for the Court.

Thus, upon finding that Mr. Hamidi has provided a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Court turns to whether Respondent's have provided evidence to rebut that showing. Respondents make the conclusory statement that "ICE is seeking to facilitate the Petitioner's removal to a third country." (Dkt. 15 at 9.) But by Respondent's own admission, ICE has submitted requests to three separate countries to accept Petitioner's removal, all of which have been denied. (*See id*. at 4.)

Respondents have had over 232 days to work on removing Mr. Hamidi to a third country. Respondents urge the Court to allow the "process to play out." (Dkt. 15 at 9.) Yet, the lack of any progress towards removal while Mr. Hamidi has remained detained indicates that his removal is not reasonably foreseeable under even the most generous understanding of the standard. *See Misirbekov v. Venegas,* 2025 WL 3033732, at *1, *2 (S.D. Tex. Oct. 29, 2025) (finding that a "lack of progress in removing Petitioner makes removal unlikely in the foreseeable future" for a petitioner detained over nine months post-removal). "[A] remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted).

Thus, Mr. Hamidi's continued detention violates due process because there is no significant likelihood of his removal in the reasonably foreseeable future. Mr. Hamidi has been detained for over a year, with over 232 days of that detention occurring during the post-removal period. During all that time, it appears that Respondents have made few efforts and attained no meaningful progress in effectuating his removal to a third country from their own admissions. The constitution

16 / 17

forbids such an infringement on liberty under due process. Therefore, Mr. Hamidi's continued detention is unconstitutional and in violation of 8 U.S.C. § 1231.

## Conclusion

For the forgoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is GRANTED. Respondents' Motion to Dismiss, or Alternatively, for Summary Judgment, (Dkt. 15), is DENIED.

Respondents are hereby ORDERED to release Petitioner from custody on or before **January 23, 2026**, subject to reasonable conditions of supervision. Respondents are also ORDERED to notify Petitioner's counsel of the exact location and exact time of his release as soon as practicable and **no less than three hours before release**. The Parties must notify the Court of the status of Petitioner's release and any conditions of supervision by **5 P.M. Central Standard Time (CST) on January 23, 2026.**

The Court's prior Order, (Dkt. 4), that Respondents must provide at least ten (10) days' written notice, including the name of the proposed country of removal and confirmation that the third country has agreed to accept Petitioner, to Petitioner, Petitioner's counsel, and this Court, prior to removal, REMAINS IN PLACE. The Court further ORDERS that Petitioner cannot be re-detained without a material change in circumstances.

IT IS SO ORDERED.

SIGNED this January 20, 2026.

Diana Saldaña
United States District Judge

17 / 17